IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ALEX M. CORDERO,

    Plaintiff,

vs.                                    CASE NO.: 4:06cv529-SPM/AK

STATE OF FLORIDA, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    This cause comes before the Court on Defendant's Motion for Summary Judgment (doc. 31). In accordance with Northern District of Florida Local Rule 56, the parties have had the opportunity to fully brief the issues and submit materials. For the following reasons, Defendant's motion for summary judgment will be granted.

**I.    BACKGROUND[1]**

    Plaintiff, Alex M. Cordero, brought this suit against his former employer, the State of Florida, Department of Environmental Protection, for violating the

---

[1] The facts relied upon in this order are taken, as they must be, in the light most favorable to the plaintiff. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

Americans with Disabilities Act of 1990, 42 U.S.C.§§12101 et seq ("ADA").  He claims that he was discriminated against because of his obesity, and that he was forced to resign when he complained.

### A.     Disability

Since the late 1980s, Plaintiff has been morbidly obese.  During the time period of October 2004 through August 2005, Plaintiff weighed more than 500 pounds.  Being 6'2" tall, Plaintiff' has a body mass index of greater than 70, which qualifies him as morbidly obese.[2]  Plaintiff's treating physician, Dr. Stephen P. Meyer, states that Plaintiff's obesity is caused by a physiological disorder of his metabolic system and neurological appetite-suppressing signal system.  Affidavit of Stephen P. Meyer, Doc. 47-18, ¶ 5.

### B.     Work History

Plaintiff began working as a temporary employee of the State of Florida, Department of Environmental Protection ("DEP") in 1989.  He became a career service employee in 1990 with the title of Planner IV.  In November 1992, Plaintiff's position was renamed Environmental Specialist II.  Plaintiff was promoted to Environmental Specialist III in November 1993.  Plaintiff worked within the Office of Coastal and Aquatic Management, and was assigned to special projects, mosquito control, liaison for legislative affairs, and the Lake

---

[2] Plaintiff lost some weight after having gastric bypass surgery, but his weight in 2006 remained over 400 pounds.

Jackson aquatics preserve manager.  Ann Marie Hartman and Paula Allen were Plaintiff's direct supervisors.

Plaintiff received favorable performance evaluations until 2004, when Danny Riley became his supervisor.  Mr. Riley made comments 10 to 50 times over a one year period about Plaintiff's weight and the need for Plaintiff to exercise.  The comments made Plaintiff feel badly about himself.

Mr. Riley complained about Plaintiff's job performance.  He told Plaintiff that Plaintiff was "not ES III material."  Mr. Riley also told Plaintiff that Plaintiff's writing skills were below average.  Mr. Riley would threaten to demote Plaintiff on a regular basis, and in December of 2004, he threatened to fire Plaintiff.  At least two additional times thereafter, Mr. Riley threatened to fire Plaintiff.

On October 6, 2004, Mr. Riley gave Plaintiff an oral reprimand for negligence and insubordination.  The reprimand included a corrective action plan that required Plaintiff to submit written and oral reports to Mr. Riley every Friday afternoon describing the status of all pending assignments.  Plaintiff refused to sign the oral reprimand and the corrective action plan.  He complained to Katherine Andrews, the director of the Office of Coastal and Aquatic Management.  Ms. Andrews told Plaintiff that Mr. Riley was his supervisor and, as such, was entitled to issue oral reprimands.

On January 15, 2005, Mr. Riley gave Plaintiff a written reprimand for failure to properly complete two assignments.  The reprimand included another

corrective action plan that itemized 11 old and new assignments that Plaintiff needed to complete, and it provided guidelines for completion.  Ms. Andrews concurred in the plan.

On February 15, 2005, Plaintiff complained to Carol Prevatt of the DEP's human resources bureau about the way Mr. Riley was treating him.  Plaintiff did not tell Ms. Prevatt that he was being discriminated against because of his weight.  Plaintiff stated that he believed Mr. Riley was frustrated by Mr. Riley's own demotion, and was taking it out on Plaintiff.[3]  Ms. Prevatt informed Ms. Andrews about her meeting with Plaintiff.

Ms. Andrews met with Mr. Riley and told him to stop telling Plaintiff that Plaintiff would be fired.  She also met with Mr. Riley and Plaintiff to discuss the problems.  Plaintiff complained that his work was satisfactory and that Mr. Riley's instructions to him were sometime not clear.  Plaintiff acknowledged to Ms. Andrews, however, that his corrective action plan was fair and reasonable.

Plaintiff took Family Medical Leave from March 3, 2005, to April 11, 2005, to take care of his mother.  Plaintiff understood that when he returned, he was to comply with the January 15, 2005, corrective action plan.  On his first Friday back to work, however, Plaintiff skipped his meeting with Mr. Riley.  Plaintiff did not call Mr. Riley or Ms. Andrews to be excused.  Plaintiff was preparing for a Monday

---

[3] Mr. Riley was demoted by Ms. Andrews in January 2005 from the Assistant Director position to Program Administrator.

meeting regarding legislative bills, and did not want to meet with Mr. Riley.

On April 29, 2005, Ms. Andrews gave Plaintiff a written reprimand for failing to attend the meeting and failing to complete assignments. According to Ms. Andrews, the Chief of Personnel, Alice Parmer, recommended that Ms. Andrews issue the reprimand given the history of difficulties between Mr. Riley and Plaintiff and the need to convey to Plaintiff the seriousness of the situation.

Ms. Andrews gave the written reprimand to Plaintiff to allow him one final opportunity to comply with the January 15, 2005, corrective action plan. Ms. Andrews told Plaintiff that failure to comply with the plan would result in his dismissal. She also told Plaintiff that the plan would remain in place until she personally lifted it.

In June 2005, Ellen McCarron was hired as an Assistant Director of the Office of Coastal and Aquatic Management. Mr. Riley went on vacation sometime near July 1, 2005. Ms. McCarron supervised Plaintiff while Mr. Riley was on vacation. Ms. McCarron told Plaintiff that the "stuff ongoing with Mr. Riley was not going to continue under her . . . ." Specifically, Plaintiff was not going to have Friday meetings and the tracking of his assignments as established in the October 6, 2004, corrective action plan. Ms. Andrews, however, had not lifted the January 15, 2005, corrective action plan as reiterated after the April 29, 2005, written reprimand.

On July 8, 2005, Plaintiff received a notice from Ms. Andrews alerting him

of his failure to submit a written summary of the June 30, 2005, ERPA teleconference within one week, as required under number 6 of Plaintiff's January 15, 2005, corrective action plan.  Plaintiff explained to Ms. Andrews that he did not think he had to submit a written summary because he discussed the ERPA teleconference meeting at a staff meeting earlier in July.  He also stated that he did not think he was still under corrective action plan because Ms. McCarron was his supervisor.  Plaintiff provided the written summary to Ms. Andrews on July 8, 2005.

When Mr. Riley returned from vacation on July 11, 2005, Ms. Andrews terminated Mr. Riley for unsatisfactory job performance.  Mr. Riley was an at will employee.  Ms. Andrews did not put him on a performance improvement plan before asking him to leave.

Also on July 11, 2005, Plaintiff received a notice of intent to take disciplinary action from Ms. Andrews.  The action was based on Plaintiff's written summary of the June 30, 2005, ERPA teleconference meeting being late.  At the pre-termination conference, Plaintiff admitted that his written summary was late.

Ms. Andrews decided to terminated Plaintiff as of August 3, 2005.  Plaintiff was permitted to resign in lieu of termination, which Plaintiff did.

## II.     STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for the granting of summary judgment "if the pleadings, depositions, answers to the interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen, 121 F.3d at 646 (citing Andersen v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). An issue of material fact is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Allen, 121 F.3d at 646.

Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). A common way for the moving party to meet its burden is by demonstrating that the non-moving party cannot show an essential element of his case. Riley v. Newton, 94 F.3d 632, 638-39 (11th Cir. 1996). In determining whether the burden has been met, the court must view the moving party's evidence and the factual inferences arising therefrom "in the light most favorable to the nonmoving party." Allen, 121 F.3d at 646.

If the moving party has satisfied its burden, the burden then shifts to the nonmoving party, who must show "that summary judgment would be inappropriate

because there exists a material issue of fact." Mullins, 228 F.3d at 1313. The nonmovant can meet this burden by presenting enough evidence to show that a reasonable finder of fact could find for the nonmovant. Allen, 121 F.3d at 646. This showing is equivalent to the requirement for withstanding a directed verdict. Anderson, 477 U.S. at 251. The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

### III. DISCUSSION

#### A. Discrimination

To establish a prima facie case of employment discrimination under the ADA a plaintiff must show that: (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability. D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1226 (11th Cir. 2005). The DEP contends that it is entitled to summary judgment on Plaintiff's claim because Plaintiff does not have a disability within the meaning of the ADA.

The ADA definition of "disability" contains two parts, consisting of "[1] a physical or mental impairment that [2] substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2). Obesity can be a physical impairment if it is the result of a physiological disorder. Merker v. Miami-Dade County, Florida, 485 F.Supp.2d 1349, 1353 (S.D. Fla. 2007). According to Plaintiff's treating physician, Dr. Stephen P. Meyer, Plaintiff's obesity is caused by

a physiological disorder of his metabolic system and neurological appetite-suppressing signal system. Thus Plaintiff has sufficient evidence to show that he suffers from a physical impairment so as to satisfy the first part of the definition of disability.

An impairment "substantially limits" a person's activities[4] when the person is: (1) "[u]nable to perform a major life activity that the average person in the general population can perform;" or (2) "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j)(1); See also Mullins v. Crowell, 228 F.3d 1305, 1315 (11th Cir. 2000). Major life activities[5] include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i); See also Gordon, 100 F.3d at 911. Other examples include, but are not limited to, "sitting, standing, lifting, [and] reaching." 29 C.F.R. App. §1630.29(i).

---

[4] Because the ADA does not provide a definition for "substantially limits major life activities . . . courts may rely upon the regulations promulgated by the Equal Employment Opportunity Commission ('EEOC') for guidance." Gordon, 100 F.3d at 911 (citing 42 U.S.C. §12116).

[5] "The ADA regulations adopt the definition of "major life activities" found in the Rehabilitation Act regulations." Gordon, 100 F.3d at 911 (citing 34 C.F.R. § 104).

Plaintiff states that he has difficulty standing form more than 10 or 15 minutes and cannot walk more than 1 or 2 blocks without stopping to rest.  These activities are major life activities according to the EEOC regulations.  45 CFR 84.3(j)(2)(ii)(2001).  A reasonable jury could conclude that Plaintiff is substantially limited in these activities compared to what an average person does on a daily basis.  See EEOC v. Sears, Robeck, & Co., 417 F.3d 789, 802 (7th Cir. 2005) (reversing summary judgment for employer where employee's evidence showed she could walk no more than one block).  Accordingly, summary judgment on this ground will be denied.

The DEP argues further that it is entitled to summary judgment on Plaintiff's discrimination claim because Ms. Andrews had legitimate, non-discriminatory reasons for terminating Plaintiff.  It is undisputed that Plaintiff did not timely submit a written summary of the June 30, 2005, ERPA teleconference, as required under his January 15, 2005, performance improvement plan.

Plaintiff contends that the reason is pretextual.  He explains that a performance improvement plan by its terms lasts for 30 days.  By placing Plaintiff on a plan of indeterminate length, the DEP did not follow its own policies.  Plaintiff also explains that he provided an oral summary of the ERPA teleconference at a staff meeting.

Regardless of the ordinary procedure, Ms. Andrews did not release Plaintiff from the corrective action plan.  She told Plaintiff that he would stay on

the plan until she told him otherwise and that Plaintiff's failure to comply would result in his termination.

In light of Ms. Andrews' admonition to Plaintiff and his failure to comply, Ms. Andrews' decision to terminate Plaintiff is one that may motivate a reasonable employer to terminate an employee.  Chapman v. A1 Transport, 229 F.3d 1012, 1031 (11th Cir. 2000).  There is no indication that Ms. Andrews was influenced by any improper motive from Mr. Riley in making her decision, since just a few days before Ms. Andrews fired Mr. Riley.

Ms. Andrews had a legitimate, non-discriminatory reason for terminating Plaintiff.  No reasonable jury could find that reason to be a pretext for disability discrimination.  Defendant's motion for summary judgment will be granted on this ground.

### B.     Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002).  The DEP contends that it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff did not engage in statutorily protected expression.

To qualify as statutorily protected expression, the employee must communicate to the employer that discrimination has occurred.  Webb v. R&B

Holding Co., Inc., 992 F.Supp. 1382, 1389 (S.D. Fla. 1998).  A general complaint about being treated unfairly with the assumption that the employer will infer discrimination is not sufficient.  Id.

In this case, Plaintiff complained generally about the way Mr. Riley was treating him.  Plaintiff did not state to anyone that Mr. Riley was engaging in disability discrimination.  No reasonable jury could find that Plaintiff engaged in statutorily protected expression.  Accordingly, the DEP's motion for summary judgment will be granted as to the retaliation claim.

### C.     Harassment

To establish a prima facie case of disability harassment, a plaintiff must show that: (1) he is disabled or perceived to be disabled; (2) he was subjected to unwelcome harassment; (3) the harassment was based on the plaintiff's disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take prompt, remedial action.  Williamson v. Intern'l Paper Co., 85 F.Supp.2d 1184, 1187 (S.D. Ala. 2000).  The DEP argues that Plaintiff cannot meet the first, fourth and fifth elements.

As already discussed in Section IIIA, Plaintiff has sufficient evidence to prove that he is disabled.   Accordingly, the motion for summary judgment will be denied on this ground.

As for the fourth element, in order for harassment to be actionable, it must

be severe and pervasive. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). "[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id.

In this case, Mr. Riley made comments about Plaintiff's weight somewhere between 10 to 50 times during a one year period. Plaintiff notes that Mr. Riley was health conscious. The comments Mr. Riley made were always related to Plaintiff losing weight by exercising. There is no indication that Plaintiff ever told Mr. Riley that the comments made Plaintiff feel badly. No reasonable jury could find that Plaintiff was subjected to a hostile work environment given these facts.

Furthermore, although Plaintiff complained generally that Mr. Riley treated him poorly, he never complained about disability harassment. The DEP cannot be held liable for failing to take prompt remedial action since Plaintiff did not put the DEP on notice that he was being harassed because of his disability. Accordingly, the DEP is entitled to summary judgment on Plaintiff's harassment claim.

## IV.   CONCLUSION

Plaintiff has sufficient evidence to show that he is disabled. He cannot, however, show that he was terminated because of his disability. Nor can he show that he was retaliated for complaining about disability discrimination or

suffered from actionable harassment.  Based on the foregoing, it is

ORDERED AND ADJUDGED:

1. Defendant's Motion for Summary Judgment (doc. 31) is granted.

2. The clerk shall enter judgment accordingly.

DONE AND ORDERED this 9th day of October, 2007.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge